**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNA LY, | Case No. 1:13-cv-01242-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| v. | (Doc. 1) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Anna Ly ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

## II. BACKGROUND

Plaintiff was born in 1954. (Administrative Record ("AR") 55.)  She completed high school in Cambodia, as well as several years of English classes at an adult school in the United States.  (AR 55-56.)  Plaintiff is married and has four children, who live in her home along with Plaintiff and her husband.  (AR 55.)  Plaintiff testified that she previously worked as a candy sorter, mail sorter, and sales cashier.  (AR 58-59.)

Plaintiff was denied previous disability claims on May 28, 2000, November 22, 2000, February 19, 2004, and July 16, 2007.  Her claim was initially denied in this matter on August 5, 2009, before being remanded by the Appeals Council on May 10, 2010.  (AR 76, 79, 93, 104, 117.)

**A.    Relevant Medical History**

Plaintiff treated with her primary physician, V.S. Kaleka, M.D., from 2005 to 2012.  (AR 370-75, 423-33, 519-28, 535-68, 580-93.)  At Dr. Kaleka's office, Plaintiff primarily saw B. Pinyasone, Physician's Assistant ("P.A"), for her complaints, which included common seasonal ailments, occasional headaches, stomach pain, knee pain, urinary incontinence, dizziness, and joint pain.  *Id.*  Plaintiff received routine treatment and medication refills.  *Id.*  On August 15, 2008, Dr. Kaleka diagnosed Plaintiff with depression, post-traumatic stress disorder ("PTSD"), osteoarthritis, GERD, urinary incontinence, upper respiratory infection, and fibroids.  (AR 550.) Diagnostic tests showed mild uterine atrophy due to menopause, diverticulosis, mild left knee degenerative joint disease, mild lumbar levoscoliosis, and gastro esophageal reflux disease.  (AR 417, 519, 520, 583, 584.)  On March 21, 2012, Plaintiff's diagnoses by B. Pinyasone, P.A., included depression, PTSD, osteoarthritis, GERD, urinary incontinence, and fibroids.  (AR 581.) On September 26, 2012, Dr. Kaleka completed a Physical Capacities Evaluation indicating Plaintiff could perform work at a light exertional level.[2]  Plaintiff could sit for four hours, stand

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when the job requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities.  If someone can do light work, the Commissioner determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

and walk for two hours, frequently lift up to ten pounds, occasionally lift 11-25 pounds, and occasionally perform postural activities. (AR 608.) Plaintiff had no problems using her hands or arms. (AR 608.) Plaintiff was moderately restricted from activities involving noise and vibrations. (AR 609.)

In May 2008, Rustom Damania, M.D., a consultative examining physician, completed an internal medicine evaluation of Plaintiff. (AR 381-86.) Plaintiff complained of headaches, depression, chest, shoulder and back pain. (AR 381.) Plaintiff's physical examination was within normal limits. (AR 383-85.) Dr. Damania opined Plaintiff could perform work at a light exertional level. (AR 385.)

In June 2009, Steven Stoltz, M.D., another consultative examining physician, completed a review of Plaintiff's medical records and a physical examination of Plaintiff. (AR 401-06.) While Plaintiff presented with multiple complaints, including headaches, dizziness, abdominal pain, chest pain, low back pain, and knee pain, her physical examination was normal. (AR 403-05.) Dr. Stoltz opined that Plaintiff had no physical functional limitations. (AR 405-06.)

On February 2, 2010, state agency reviewing physician M. Nawar, M.D., reviewed Plaintiff's medical records and noted that Plaintiff had not presented any new or material evidence regarding her medical condition since the Administrative Law Judge ("ALJ") had found Plaintiff not disabled in August 2009. (AR 486.) Dr. Nawar noted that Plaintiff denied any changes in her conditions and opined that Plaintiff had no functional limitations but was limited to simple, repetitive tasks. (AR 486-87.)

Plaintiff treated with Dr. Maximo Parayno for depressive disorder from 2008 to 2010. Dr. Parayno prescribed medication for Plaintiff's depression. (AR 504-17, 600-06, 611-17.) Dr. Parayno's treatment notes included check–box forms indicating a variety of symptoms, including blunted affect, and poor concentration, memory, judgment and attention. Dr. Parayno's treatment notes did not include explanations or objective clinical findings. (AR 504-17, 600-06, 611-17.)

In August 2012, James Murphy, M.D., examined Plaintiff. (AR 573-78.) Although Plaintiff exhibited a blunt affect, her mental status examination showed no significant cognitive deficits. (AR 574-75.) Plaintiff was able to participate throughout the three-hour evaluation. Although Plaintiff's test results showed low intelligence, Dr. Murphy doubted the reliability of the scores, noting that Plaintiff attended ten years of schooling in Cambodia, a country that did not generally educate women, studied English as a second language for three years, and was able to hold work positions in the United States for over ten years. (AR 574-77). Dr. Murphy offered no diagnosis except to "Rule Out Malingering," indicating his belief that Plaintiff was indeed malingering. (AR 577.)

**B.    Administrative Proceedings**

On January 30, 2009, Anna Ly filed an application for SSI. (AR 276-77, 295.) On March 19, 2010, after being denied initially and again upon reconsideration, Plaintiff requested an administrative hearing on her claim. (AR 154-56.) On April 28, 2011, a hearing was held before an Administrative Law Judge ("ALJ"). (AR 31-50.) On May 10, 2011, the ALJ issued a decision finding Plaintiff not disabled, and denied Plaintiff's claim for benefits. (AR 119-35.) On July 5, 2011, Plaintiff requested review of the ALJ's decision by the Appeals Council, which was granted. (AR 197-98.)

On May 5, 2012, the Appeals Council vacated the ALJ's decision and remanded to the ALJ for further proceedings. (AR 136-39.) On September 27, 2012, pursuant to the order of remand, a supplemental hearing was held on Plaintiff's claim. (AR 51-75.) Plaintiff was present and represented by counsel, and testified with the assistance of an interpreter. *Id*. Vocational expert ("VE") Jose L. Chaparro also testified at the hearing. *Id*. On October 12, 2012, the ALJ issued a second decision denying Plaintiff's claim for benefits. (AR 13-24.) Plaintiff requested review of the ALJ's second decision by the Appeals Council, which was denied, thereby making the ALJ's decision the final decision of the Commissioner. (AR 3-6.) Plaintiff then commenced this civil action appealing the Commissioner's decision. (Doc. 1.)

### 1. Plaintiff's Testimony

Plaintiff attended both administrative hearings on April 28, 2011, and September 27, 2012. (AR 31-50, 51-75). At both hearings Plaintiff testified that she watched television, walked around her house and completed some household chores. (AR 36-37, 56-57.) Plaintiff testified she could perform her personal care, had a driver's license, and sometimes drove and ran errands. (AR 36, 56.)

Plaintiff testified she had low back pain and could not sit for long periods of time. (AR 59.) Plaintiff could lift a gallon of milk, stand 10-15 minutes at a time, and walk about one block. (AR 39-41, 63-64.)

Plaintiff was very depressed and cried every day. (AR 41-42, 45, 70.) She took medications for depression as well as for her other conditions. (AR 41, 43-44, 62-63, 66.) At the September 27, 2012, hearing, Plaintiff testified that she also suffered from headaches three times a week, from back pain about three times a day, and needed to rest two to three hours per day due to pain. (AR 59, 62-64, 66, 68.)

### 2. Vocational Expert Testimony

Relying upon the Dictionary of Occupational Titles ("DOT"), VE Jose L. Chaparro testified that Plaintiff's past work included mail clerk and hand packager. (AR 71.)

The ALJ presented the VE with several hypotheticals. In the first hypothetical, the ALJ asked the VE whether a hypothetical person of the same age, education, and experience as Plaintiff, who has the ability to work at an unrestricted exertional level, but is restricted to simple, routine tasks, could perform Plaintiff's past work. (AR 71.) The VE responded that the hypothetical person could perform both of Plaintiff's past jobs. (AR 71.) The ALJ then asked the VE whether the hypothetical person could perform any alternate work. The VE responded that the hypothetical person could perform all unskilled work at all exertional levels. (AR 72.)

In a second hypothetical, the ALJ asked the VE whether the person described in the first hypothetical, but with a limitation to medium work, who could lift 50 pounds occasionally and 25 pounds frequently, and sit or stand for six hours in an eight-hour work day, would be able to

5

perform Plaintiff's past work.³ The VE testified that the person could perform Plaintiff's past work as well as alternative work, including all unskilled work that required medium exertion and was sedentary. (AR 72.) Examples included industrial cleaner, laboratory equipment cleaner, and automobile detailer. (AR 72-73.)

In a third hypothetical, the ALJ added that the hypothetical person would be unable to concentrate for more than an hour at a time. (AR 73.) The VE responded there would be no jobs available. (AR 73.)

Plaintiff's attorney then asked the VE to assume the hypothetical person from the second question, but added that the person would likely miss four days a month due to psychological symptoms, and asked the VE whether the person could perform any work. (AR 74.) The VE responded that the person could not perform any work. (AR 74.)

The VE testified that his testimony did not conflict with the Dictionary of Occupational Titles ("DOT"). (AR 74.)

**C.    The ALJ's Decision**

The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 416.971. (AR 16-24). At step one, the ALJ found that Plaintiff had not worked since February 20, 2009, the date of her application. At step two, Plaintiff had severe impairments consisting of major depression without psychotic features, post-traumatic stress disorder, and left knee degenerative joint disease. At step three, the ALJ found that Plaintiff's impairments, singly or combined did not meet or equal any Listing in 20 C.F.R., Part 404, Subpt. P., App. 1. The ALJ determined that Plaintiff's subjective complaints were not credible. The ALJ found that Plaintiff had the residual functional capacity ("RFC")⁴ to lift 50 pounds occasionally and 25 pounds frequently; she could sit, stand,

---

³ "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c).

⁴ RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

and walk six to eight hours in an eight-hour day; and she was limited to simple, routine tasks. At step four, the ALJ found Plaintiff had past relevant work, but the work was performed close to 15 years prior. Therefore, the ALJ concluded Plaintiff's past work was not relevant. (AR 23.) At step five, the ALJ found Plaintiff could perform other work that existed in significant numbers in the local and national economies. (AR 23.)

### III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV.  APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological

7

abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listings. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity, despite the impairment or various limitations, to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that the ALJ's RFC determination that Plaintiff could perform medium work was not based on substantial evidence and the ALJ's decision must be remanded.[5] (Doc. 12, 7.) Specifically, Plaintiff asserts that the ALJ improperly rejected the opinion of Plaintiff's

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c).

8

treating doctor Dr. Kaleka, and that the ALJ improperly relied on the ALJ's own lay opinion in determining Plaintiff could perform medium work. (Doc. 12, 15.)

The Commissioner responds that the ALJ properly found Plaintiff could perform medium work based on the record as a whole. (Doc. 13, 4.) The Commissioner argues that the ALJ provided the requisite specific and legitimate reasons for rejecting the opinions of Plaintiff's treatment provider, and properly determined Plaintiff's credibility. (Doc. 13, 3.)

**A.   The ALJ's Determination That Plaintiff Can Perform Medium Work As Part of Plaintiff's RFC is Supported by Substantial Evidence**

**1.   Legal Standard**

An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883. The ALJ is required to consider any medically determinable impairment including severe and non-severe conditions in developing Plaintiff's RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the

Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).

An ALJ must consider specified factors in determining the weight a treating physician's opinion will be given, including (1) the length of the treatment relationship and the frequency of examination, and (2) the nature and extent of the treatment relationship. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007). Additional factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (4) the consistency of the medical opinion with the record as a whole, (5) the specialty of the physician providing the opinion, (6) and other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements, and the physician's familiarity with other information in the record. *Id.*

### 2. The ALJ's Findings

The ALJ determined Plaintiff had the RFC to lift 50 pounds occasionally and 25 pounds frequently. (AR 17.) Plaintiff could sit, stand, and walk six to eight hours in an eight-hour day. (AR 17.) The ALJ determined Plaintiff could perform medium work as defined in 20 CFR 416.967(c), except she was limited to simple, routine tasks due to her mental impairments. (AR 17.)

In formulating Plaintiff's RFC, the ALJ explained that "[she] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (AR 17.) The ALJ discussed Plaintiff's physical impairments and mental impairments separately. (AR 18-23.) Regarding Plaintiff's physical conditions, the ALJ assessed the medical evidence as follows:

> . . . The record documents many complaints, but there is little objective evidence to explain the level of severity the claimant alleges.
>
> I have reviewed the new and material evidence received in connection with the claimant's appeal, but find nothing to persuade me to alter my previous finding. The consultative internal medicine examinations have generally been within normal limits.  Dr. Stoltz found no objective evidence for any ongoing medical disorders that would place any limits on work-related activities.  Dr. Damania made no diagnosis other than psychosomatic problems secondary to psychiatric problems, and concluded that claimant could essentially perform light work.  Dr. Damania's examination was also generally within normal limits.
>
> Although Dr. Damania stated the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently, his examination findings were entirely within normal limits.  It appears the limitation to light exertion is based primarily on the claimant's subjective complaints of back pain, shoulder pain, exhaustion, headaches, and chest pain.  However, the record strongly suggests the claimant's subjective complaints are not commensurate with the objective findings.  . . . Thus, Dr. Damania's limitation to light physical exertion appears overly restrictive and the claimant would be capable of greater physical activities.
>
> The claimant's treating physician, Physicians' Assistant Pinyasone, offers the same diagnoses and clinical findings, but described few significant examination findings throughout the treatment history.  Indeed, the medical record shows no significant changes in the claimant's physical condition.  The remaining medical records indicate multiple routine screening examinations and treatment for common seasonal ailments.  Dr. V.S. [K]aleka offered his opinion of the claimant's physical [RFC] wherein he stated the claimant could perform up to light exertion.  However, Dr. [K]aleka's support for this assessment includes only minor objective findings from two laboratory and imaging studies and it appears that rarely, if ever, has seen the claimant.  Specifically, Dr. [K]aleka cites a CT of the abdomen  . . . . A blood test also revealed high cholesterol.
>
> None of these findings sufficiently explain such severe limitations that would preclude all work activity.  Furthermore, Dr. [K]aleka does not explain how these conditions would limit work-related activities such as lifting, carrying, sitting, standing, walking, or performing postural activities.  Nor do these statements explain the environmental restrictions Dr. [K]aleka suggested.  For these reasons, I give Dr. [K]aleka's assessment very little weight.
>
> Overall, I give the greatest weight to the findings and opinions of the consultative examiner, Dr. Damania.  Even giving the claimant the benefit of the doubt and considering conflicting opinions that the claimant has no exertional limitations or could perform light exertion, my own review of the evidence leads me to conclude the claimant's true physical capacity falls within the medium range, but she continues to be limited to performing simple, routine-type tasks.

(AR 22-23) (citations omitted).

### 3. The ALJ Provided Specific and Legitimate Reasons to Reject Dr. Kaleka's September 2012 Opinion

Plaintiff argues that the ALJ improperly discredited Dr. Kaleka's opinion as Plaintiff's treating physician. (Doc. 12, 11-15.) The Commissioner responds that the ALJ gave specific and legitimate reasons for rejecting Dr. Kaleka's opinion. (Doc. 13, 6.)

On September 26, 2012, Dr. Kaleka completed a Physical Capacities Evaluation indicating Plaintiff could perform up to light work. (AR 608.) Dr. Kaleka opined Plaintiff could sit for four hours, stand for two hours, and walk for two hours of an eight-hour work day. (AR 608.) Using check boxes, Dr. Kaleka indicated Plaintiff could lift between 10 and 20 pounds frequently, 11-25 pounds occasionally, and never more than 25 pounds. (AR 608.) Plaintiff could occasionally perform postural activities such as squatting, bending, stooping, kneeling, crawling, or climbing. (AR 608.) Plaintiff had mild restrictions from extreme cold or heat, wetness, fumes, odors, dust, gasses, and hazards like machinery or heights. (AR 608.) Plaintiff was moderately restricted from noise and vibrations. (AR 608.) Dr. Kaleka outlined the bases for his opinion as follows: Plaintiff's weight was less than 100 pounds, Plaintiff's abdominal CT scan results indicated "mild" abnormalities, and Plaintiff's blood test indicated cholesterol of 223 mg/dl. (AR 609.) Dr. Kaleka provided no additional explanation for his opinion of Plaintiff's limitations. (AR 609.)

Dr. Kaleka's opinion of Plaintiff's physical condition was contradicted by consultative physician Dr. Stoltz, who opined Plaintiff had no physical limitations. (AR 405.) Therefore the ALJ was required to articulate specific and legitimate reasons to discredit Dr. Kaleka's opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

The ALJ specified several reasons for affording Dr. Kaleka's opinion very little weight. First, the ALJ noted that Dr. Kaleka's support for his assessment of Plaintiff's conditions included only minor objective findings, and the findings cited by Dr. Kaleka did not evidence such severe limitations that would preclude all work activity. (AR 22.) The ALJ specifically noted that Plaintiff's CT scan evidenced only mild abnormalities, and Plaintiff's blood work revealed only elevated cholesterol. (AR 22.) Second, the ALJ noted that Dr. Kaleka's opinion did not sufficiently explain how Plaintiff's conditions would limit work-related activities such as lifting,

12

carrying, sitting, standing, walking, or postural activities, or the environmental restrictions included in his opinion. (AR 22.)

Plaintiff first contends that Dr. Kaleka's reliance on the objective findings is a medical opinion, while the ALJ's assessment that the objective findings do not support the opinion is merely a lay opinion. (Doc. 12, 12.) Therefore, Plaintiff contends, the ALJ's interpretation of the objective evidence does not constitute substantial evidence supporting the rejection of Dr. Kaleka's opinion. (Doc. 12, 12.)

An ALJ may consider the amount of relevant evidence supporting a treating doctor's opinion. *Orn,* 495 F.3d at 631. The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Here, the factors identified in *Orn* and 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) support the ALJ's decision to discredit Dr. Kaleka's opinion. Dr. Kaleka's opinion was not supported by the evidence in the record -- Plaintiff's CT scan and blood test, the objective evidence to which Dr. Kaleka cited, revealed only mild abnormalities. (AR 609.) Additionally, the Internal Medicine Evaluations completed by Drs. Damania and Stoltz and the review by Dr. Nawar all assessed that Plaintiff had no significant functional limitations. (AR 381-86, 401-05, 486.) Thus, the ALJ's rejection of Dr. Kaleka's opinion for lack of support in the record was a reasonable interpretation and a specific and legitimate reason for discrediting Dr. Kaleka's opinion.

Plaintiff also contends that the ALJ's second reason for rejecting Dr. Kaleka's opinion -- that Dr. Kaleka did not explain how Plaintiff's conditions would limit her ability to lift, carry, sit, stand, walk, perform postural limitation, or necessitate environmental limitations -- is insufficient. (Doc. 12, 13.) However, Dr. Kaleka's lack of explanation for the limitations to which he opined is a specific and legitimate reason to discredit his opinion. *Orn*, 495 F.3d at 631. In *Rollins v. Massanari*, the court held that the ALJ provided adequate reasons for not fully crediting the opinion of the claimant's treating physician. Some of the treating physician's recommendations "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician. 261 F.3d 853, 856 (9th Cir. 2001). Specifically, the

treating physician claimed that the claimant's condition prevented her from engaging in any bending, stooping, crouching, crawling, kneeling, climbing, and balancing, and also indicated that the claimant should never be exposed to any smoke, fumes, dust, temperature extremes, humidity, vibrations, or noise, among other things. *Id*. The court in *Rollins* found that there was no basis in the record for these restrictions, and the claimant herself had never claimed to have any problems with many of the conditions and activities that the treating physician instructed her to avoid. *Id*.

Here, as in *Rollins*, the lack of a basis for Dr. Kaleka's opinion regarding Plaintiff's restrictions and environmental limitations was a specific and legitimate reason for the ALJ to discount the doctor's opinion. *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of the controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because it was in the form of check-off reports with no explanation of the basis of the conclusions). Dr. Kaleka indicated Plaintiff could only occasionally perform postural activities such as squatting, bending, stooping, kneeling, crawling, or climbing; had mild restrictions from extreme cold or heat, wetness, fumes, odors, dust, gasses, and hazards like machinery or heights; and was moderately restricted from noise and vibrations. (AR 608.) Despite assessing these numerous limitations, Dr. Kaleka did not explain how he reached his opinion, or how the limitations would affect Plaintiff's ability to work. (AR 22, 608-09.) Dr. Kaleka's opinion was not supported by his treatment notes, which contained few significant clinical findings. (AR 22, 37-75, 423-33, 519-28, 535-68, 580-93.) *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (Holding that ALJ properly rejected doctor when doctor's conclusions regarding claimant's limitations were not supported by his own treatment notes, and treatment notes neither indicated that claimant would be limited nor demonstrated the doctor recommended such limitations to claimant.)

Plaintiff argues that the ALJ erred by stating that Dr. Kaleka's opinion "expressed such severe limitation that would preclude *all* work limitations" (emphasis added), when the opinion merely limited Plaintiff to *light* work. (Doc. 14, 3.) However, regardless of whether Dr. Kaleka's opinion limited Plaintiff to light work or prohibited Plaintiff from any work, the ALJ properly discredited the opinion based on the lack of explanation by Dr. Kaleka of the limitations imposed, which is a specific and legitimate reason to discredit his opinion.

Plaintiff further contends that, rather than discrediting Dr. Kaleka because he did not provide explanations for his findings, the ALJ had a duty to develop the record. (Doc. 12, 13.) However, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)). In general, it is the duty of the claimant to prove to the ALJ that the claimant is disabled. 20 C.F.R. § 404.1512(a). The ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, the ALJ may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3), *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001).

Here, the ALJ conducted a review of the record, and upon evaluation of the evidence, the ALJ determined the record was adequate to make an RFC determination. The ALJ explained that she credited Plaintiff's alleged mental conditions of major depression and PTSD, and then assigned limitations consistent with the conditions by including a limitation to simple, repetitive tasks in Plaintiff's RFC. (AR 16, 17.) Further, the ALJ reviewed the medical evidence in its entirety and explained her conclusion that Plaintiff was able to perform medium exertion work. (AR 22-23.) Under these circumstances, the ALJ had no duty to further develop the record.

In sum, the ALJ provided specific and legitimate reasons to discredit Dr. Kaleka's opinion, including a lack of objective findings in the record supporting the opinion, and the lack of

explanation of how the limitations assessed affected Plaintiff's ability to work, why he assessed the environmental limitations, and why his opinion diverged from his treatment notes.

### 4. The ALJ Properly Determined Plaintiff Could Perform Medium Work

Plaintiff contends the ALJ relied on her lay opinion in determining that Plaintiff could perform medium work, and therefore the RFC lacks the support of substantial evidence. (Doc. 12, 12-15.) The Commissioner responds that the ALJ did not rely on her lay opinion, but instead properly determined Plaintiff's RFC by translating Plaintiff's limitations into work-related restrictions, and the ALJ's assessment is supported by substantial evidence. (Doc. 13, 5.)

In determining Plaintiff's RFC, the ALJ explained that a review of the entire record led to the conclusion that Plaintiff's physical capacity fell within the medium range and Plaintiff was limited to simple, repetitive tasks. (AR 17.) The ALJ first discussed opinions on Plaintiff's mental condition from Drs. Engeln, Michiel, Murphy, and Parayno.[6] (AR 17-20.) After reviewing the opinions of Plaintiff's mental condition, the ALJ afforded great weight to Dr. Murphy's opinion and his assessment that Plaintiff was limited to simple, repetitive tasks. (AR 21.)

The ALJ then discussed the opinions of Drs. Stoltz, Damania, and Kaleka, including P.A. Pinyasone who is part of Dr. Kaleka's practice, regarding Plaintiff's physical conditions. (AR 22-23.) The ALJ noted that although the record contained many complaints, it contained little evidence explaining the level of severity claimed by Plaintiff. (AR 22.) Both consultative internal medicine examinations were generally within normal limits. Dr. Stoltz's examination found no objective evidence for any ongoing medical disorders that would place limits on work-related activities. Dr. Damania's examination results were normal, yet he assessed Plaintiff could perform only light work. (AR 22-23.) The ALJ afforded Dr. Damania's opinion and findings the "greatest weight," but also properly rejected Dr. Damania's assessment that Plaintiff could perform only

---

[6] Richard Engeln, M.D., assessed Plaintiff's mental status on June 15, 2008. (AR 387-96.) Ekram Michiel, M.D., assessed Plaintiff's mental status on June 6, 2009. (AR 407-09.) Neither opinion is at issue in this matter because both opinions assessed Plaintiff's mental capacity rather than the exertional limitations which Plaintiff now appeals.

light work because it was based on Plaintiff's discredited subjective complaints.[7]  (AR 22.) *Fleming v. Astrue*, 303 F. App'x 546, 549 (9th Cir. 2008) ("The fact that a medical opinion was based on a claimant's subjective testimony -- where the claimant's credibility has been undermined -- is a specific and legitimate reason for rejecting that medical opinion.")  The ALJ noted that medical records from 2005 to 2012, during which Plaintiff treated with P.A. Pinyasone at Dr. Kaleka's office, showed no significant changes in Plaintiff's physical condition.  In addition, the medical records consisted primarily of multiple routine screening examinations and treatment of common seasonal ailments.  (AR 22.)  The ALJ concluded that, "[e]ven giving the claimant the benefit of the doubt and considering conflicting opinions that the claimant has no exertional limitations or could perform light exertion, my own review of the evidence leads me to conclude [Plaintiff's] true physical capacity falls within the medium range, but she continues to be limited to performing simple, routine-type tasks."  (AR 23.)

It is the ALJ's responsibility to provide an interpretation of the facts and conflicting clinical evidence, and make a finding based on that interpretation. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In determining a claimant's RFC, the ALJ must consider all relevant evidence in the record.  *Robbins*, 466 F.3d at 883.  An ALJ is not required to adopt any one medical opinion, but instead must translate Plaintiff's limitations into work-related restrictions and functions, as the ALJ did here.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-1176 (9th Cir. 2008) (ALJ may properly translate Plaintiff's exertional and non-exertional impairments into an RFC finding).

Plaintiff contends the ALJ impermissibly substituted her own lay opinion for the medical opinions.  (Doc. 12, 13.)  To the contrary, as discussed above, the ALJ properly rejected Drs. Kaleka and Damania's opinions that Plaintiff could perform light work.  The remaining opinions in the record – those from Dr. Stoltz' examination and Dr. Nawar's review of the medical record – both indicated Plaintiff had no exertional limitations.  (AR 405-06, 486-87.)  The ALJ's determination that Plaintiff could perform medium work was a conservative assessment of Plaintiff's abilities based on the record as a while.  Because the remaining evidence in the record

---

[7] Plaintiff does not contest the ALJ's finding that her subjective testimony was not credible.  (Doc. 12.)

indicated Plaintiff could work at all exertional levels, any error in determining Plaintiff could perform medium work was harmless. Had the ALJ not limited Plaintiff to medium work in her RFC determination, no exertional limitations would have been included in the RRC.

Plaintiff further contends that the ALJ's opinion "stands alone" because the state agency reviewers' opinions did not have the benefit of Dr. Kaleka's 2012 opinion or objective findings after February 2010, and therefore their opinions were invalid. (Doc. 12, 12.) However, Plaintiff stated in her opening brief that she had been, "suffering from essentially the same ailment for over 6 years." (Doc. 12, 12.) Plaintiff's argument is not convincing because Plaintiff admits that her condition has not changed, and the record demonstrates that Dr. Kaleka's tests and treatment notes do not evidence changes in Plaintiff's conditions. The ALJ properly made findings based on medical evidence and medical opinions that were not discredited. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). To the extent that Plaintiff is asserting that the ALJ's opinion "stands alone," Plaintiff is incorrect because the ALJ's opinion properly relied upon Dr. Damania's 2008 opinion and Dr. Stoltz' 2009 opinion.

The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. Here, the ALJ properly translated Plaintiff's limitations into the RFC by reviewing the entire record. The ALJ assessed the conflicting medical opinions and concluded Plaintiff's true ability was within the medium exertion range based on the record. For the reasons discussed above, the ALJ's determination that Plaintiff could perform medium work as part of developing Plaintiff's RFC was supported by substantial evidence in the record.

//
//
//
//
//
//

**VI.  CONCLUSION AND ORDER**

Based on the foregoing, the Court finds the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Anna Ly.


IT IS SO ORDERED.

Dated:   **September 24, 2014**                    /s/ Sheila K. Oberto
                                                                    UNITED STATES MAGISTRATE JUDGE